# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| In re Application of<br><br>G+ COMMUNICATIONS, LLC,<br><br>Applicant<br><br>For An Order Pursuant To<br>28 U.S.C. § 1782 To Conduct Discovery For<br>Use In A Foreign Proceeding | Civil Action No. 2:22-mc-00003-JRG-RSP |

**INTERVENOR SAMSUNG ELECTRONICS AMERICA, INC.'S
OPPOSITION TO G+ COMMUNICATIONS' *EX PARTE*
APPLICATION FOR DISCOVERY PURSUANT TO 28 U.S.C. § 1782**

## TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................... 1

II. GCOMM'S APPLICATION FOR DISCOVERY SHOULD BE DENIED ...................... 1

    A. The Brazilian Litigation ................................................................................ 1

    B. The Controlling Standards as Announced in *Intel* .................................... 4

    C. GComm's Application Should Be Denied Under the *Intel* Discretionary Factors. 5

        1. Since GComm's application is a clear attempt to circumvent Brazilian procedure and discovery restrictions, *Intel* Factor Three weighs against grant ............................................................................................................. 6

        2. Since the Brazilian courts would not be receptive to evidence obtained through GComm's application, *Intel* Factor Two weighs against grant ..... 8

        3. The discovery GComm requests is unduly burdensome and intrusive, and therefore *Intel* Factor Four weighs against grant ...................................... 11

        4. GComm really seeks discovery from SEDA, which is party to the Brazilian litigation, and thus *Intel* Factor One weighs against grant ........ 14

III. CONCLUSION ........................................................................................................ 16

I.   **INTRODUCTION**

Samsung Electronics America, Inc. ("SEA" or "Samsung") respectfully opposes the application of G+ Communications, LLC ("GComm") brought under 28 U.S.C. § 1782 to obtain discovery for use in a case pending in Brazil (Case No. 0081472-49.2022.8.19.0001) against Samsung Eletrônica Da Amazônia, Ltd. ("SEDA") including a corresponding appeal by SEDA (Interlocutory Appeal No. 0031565-11.2022.8.19.0000) and action before the Brazilian Patent Office (No. 5046514-82.2022.4.02.5101) (together, the "Brazilian Litigation"). Samsung opposes GComm's application because it circumvents Brazilian discovery restrictions, seeks discovery that would not be permitted in Brazilian courts, is overbroad and unduly burdensome, and attempts to use SEA as a puppet to get discovery from SEDA. Under the factors articulated by the Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004), the Court should deny GComm's application. Samsung's opposition is supported by the accompanying Declaration of Luiz Edgard Montaury Pimenta ("the Montaury Pimenta Decl."), who represents Samsung in the Brazilian Litigation and is knowledgeable of the relevant Brazilian laws and procedures.

II.   **GCOMM'S APPLICATION FOR DISCOVERY SHOULD BE DENIED**

   A.   **The Brazilian Litigation**

GComm's application is part of its global effort to force Samsung to license its portfolio of allegedly standard-essential mobile communications patents on unreasonable terms that violate the FRAND commitments to which GComm is bound. To this end, GComm has sued Samsung on five allegedly standard-essential patents in this very Court and, even though Samsung has been and remains willing to engage in good-faith licensing negotiations, GComm has sought a preliminary injunction against Samsung in Brazil, despite the fact that "a patent-holder who signs 'such a sweeping promise' as a RAND agreement 'at least arguably . . .

1

guarantee[s] that the patent-holder will not take steps to keep would-be users from using the patented material, such as seeking an injunction, but will instead proffer licenses consistent with the commitment made.'" *Microsoft Corp. v. Motorola, Inc*. ("Microsoft II"), 795 F.3d 1024, 1049 (9th Cir. 2015) ("Microsoft II") (quoting *Microsoft Corp. v. Motorola, Inc.* ("Microsoft I"), 696 F.3d 872, 884 (9th Cir. 2012)); *G+ Communications, LLC, v. Samsung Elecs. Co., LTD.*, No. 2:22-CV-0078-JRG (E.D. Tex. 2022); Case No. 0081472-49.2022.8.19.0001 (Brazil), Interlocutory Appeal No. 0031565-11.2022.8.19.0000 (Brazil).  As Samsung explained in its recently-filed answer in this Court, Samsung has been willing to negotiate in good faith for a FRAND license on patents that are essential, valid, and enforceable but such discussions are in their infancy.  *G+ Communications, LLC, v. Samsung Elecs. Co., LTD.,* No. 2:22-CV-0078-JRG (E.D. Tex. 2022), Dkt. No. 18 ¶ 20.

In any event, GComm's application seeks intrusive and burdensome discovery in the form of 21 requests for production and 17 corporate deposition topics, covering topics ranging from technical documentation relating to compliance with 3GPP standards (e.g., Proposed RFP No. 1, Proposed Dep. Topic No. 2), communications with third parties (e.g., Proposed RFP No. 10), detailed financial information (e.g., Proposed RFP No. 14, Proposed Dep. Topic No. 11), and licensing negotiations (e.g., Proposed RFP No. 20).  Dkt. No. 1-2 (Ex. A, GComm's Discovery Request).  Further, the application primarily seeks information about Samsung's Brazilian activities that would be more properly directed to SEDA—the defendant in the Brazilian litigation—instead of to SEA, the company to which the application is directed.  For example, GComm seeks "[a]ll Documents discussing, referring, or relating to Samsung Eletrônica Da Amazônia LTDA's representations in the Brazilian Litigation that BR729 is not Essential to the 3GPP Standard" and further seeks deposition testimony on "Samsung Eletrônica

Da Amazônia LTDA's determination that G+ Communications' offer to license the G+ Patent Portfolio was not fair, reasonable, and nondiscriminatory ("FRAND")." Dkt. No. 1-2 (Ex. A, GComm's Discovery Request) at Proposed RFP No. 7, Proposed Dep. Topic No. 6. Even where the discovery is requested of SEA and SEDA, most of the discovery is only applicable to SEDA. For example, GComm seeks "[a]ll Documents discussing, referring, or relating to any Communications between SEA, or anyone acting on its behalf, and any other Person, including Samsung Eletrônica Da Amazônia LTDA, relating to (1) the Brazilian Litigation, (2) BR729, and (3) each Accused Product's compliance [with] the 3GPP Standard." Dkt. No. 1-2 (Ex. A, GComm's Discovery Request) at Proposed RFP No. 10.

The Brazilian patent litigation system does not permit litigants to demand this type of information from their adversaries. Montaury Pimenta Decl., ¶¶ 9, 19. Indeed, Brazil has no equivalent of American-style discovery requests. *Id*. In some circumstances, before filing a patent infringement case, potential plaintiffs may be able to seek evidence from a defendant in an action called a preparatory action that is separate—and takes place before—a patent infringement action. *Id*., ¶ 11. During a patent infringement action, evidence is provided in three phases, and discovery requests are not permitted during any of them. *Id*., ¶ 10. In the first phase of an infringement action, parties brief their initial arguments based on information and evidence **within their own possession** (including any evidence obtained during a preparatory action, if one was filed). *Id*., ¶¶ 10, 11. In the second phase of an infringement action, a court-appointed expert reviews the parties' briefs and **the expert or the judge**—not the parties—may initiate requests for certain information. *Id*., ¶¶ 10. If, and only if, there is a finding of infringement and that finding of infringement withstands appeal, the litigation will proceed to a third phase in which **the court or a court-appointed accounting expert** will order the defendant to produce

3

certain financial information. *Id.*, ¶¶ 10, 13. It may take several years for a case to reach this third phase, if it ever reaches it at all, depending on the complexity of the matter. *Id.*, ¶ 10. The procedures for Brazilian patent litigation never permit parties to demand directly from their adversaries the type of information that GComm seeks through its application. *Id.*, ¶¶ 10, 15.

The discovery GComm seeks is not timely in the Brazilian litigation for at least two reasons. *See id.*, ¶¶ 10-15. First, if GComm had wanted to obtain evidence from Samsung for use during its initial briefs, its opportunity to attempt to do was during a preparatory action under Section 381 of the Brazilian Civil Code. *Id.*, ¶ 11. However, GComm never brought a preparatory action and instead proceeded directly to the primary infringement action. *Id.*, ¶ 12. Plaintiffs in Brazil are expected to have the information they need for their infringement case in their possession at the time they bring the infringement case. *Id.*, ¶ 11. The time to cure any perceived evidentiary deficiencies is during a preparatory action, not during the main infringement action. *Id.*, ¶ 12. Second, financial information of the type that GComm seeks will only be considered by a Brazilian court after the court has found infringement and all appeals have run their course. *Id.*, ¶¶ 10, 13. Indeed, GComm has asked for early discovery of Samsung's financial information but the Brazilian court has not allowed it. *Id.*, ¶¶ 16, 22. Samsung has no expectation that GComm will ever be able to prove infringement, and even if it were able to, it could take several years or more before the case is at a stage where financial information will be considered. *Id.*, ¶¶ 10, 19. And even then, GComm would have no ability to demand financial information from Samsung. *Id.*, ¶ 15. Samsung's production of financial information would be court-ordered. *Id.*

    **B.**    **The Controlling Standards as Announced in *Intel***

"[A] district court is not required to grant a § 1782(a) discovery application simply because it has the authority to do so." 28 U.S.C. § 1782; *Intel*, 542 U.S. at 264 (emphasis

4

added).  The decision is discretionary and courts may refuse to issue a discovery order.  *Id*. at 260-61 (citation omitted).  The § 1782 "goals do not in turn mean that a party to foreign litigation is entitled to unbridled and unlimited discovery."  *In re Application for Discovery for Use in Foreign Proceeding Pursuant to 28 U.S.C. § 1782*, No. 17-4269-KM-JBC, 2019 U.S. Dist. LEXIS 5632, at *11, *36 (D. N.J. Jan. 10, 2019) (denying Section 1782 request that "was filed before defendant had been served or local discovery had been tried; and that the discovery requests are unenforceably overbroad").

In determining whether to grant a Section 1782 application, once the statutory requirements are satisfied courts consider (1) whether the person from whom discovery is sought is a participant in the foreign proceeding; (2) the nature of the foreign litigation, the character of the proceedings already underway, and the foreign country's receptivity to court assistance from the U.S.; (3) whether the petitioner is attempting to circumvent proof-gathering restrictions; and (4) whether the request for discovery is unduly intrusive or overly broad.  *Intel*, 542 U.S. at 264-65.

    **C.**    **GComm's Application Should Be Denied Under the *Intel* Discretionary Factors**

GComm's application should be denied because every *Intel* factor weighs heavily in favor of denying the application.  GComm's application is a clear attempt to circumvent Brazilian discovery restrictions, the Brazilian courts would not be receptive to the discovery GComm seeks at this time, the discovery is unduly burdensome and intrusive, and the application attempts to use SEA as a puppet to get discovery from SEDA.  The *Intel* factors weigh heavily in favor of denying the application.

> 1. **Since GComm's application is a clear attempt to circumvent Brazilian procedure and discovery restrictions, *Intel* <u>Factor Three</u> weighs against grant**

We start with the third *Intel* factor since it alone mandates denial of GComm's request. A purpose of this factor is to "discourage a party from making an 'end-run around foreign proof-gathering restrictions or other policies of a foreign country.'" *In re Application for Discovery for Use in Foreign Proceeding Pursuant to 28 U.S.C. § 1782*, 2019 U.S. Dist. LEXIS 5632, at *27 (citation omitted). Courts are "wary of granting discovery under § 1782 when it appears that the party seeking discovery may be using the United States statutes and federal court system to 'jump the gun' on discovery in the underlying foreign suit." *Norex Petroleum Ltd. v. Chubb Ins. Co. of Canada*, 384 F. Supp. 2d 45, 54 (D.D.C. 2005) (noting "it appears the Canadian litigation may not even be at the stage in which discovery would be appropriate."). "[A] perception that an applicant has 'side-stepped' less-than-favorable discovery rules by resorting immediately to § 1782 can be a factor in a court's analysis." *In re Application for Discovery for Use in Foreign Proceeding Pursuant to 28 U.S.C. § 1782*, 2019 U.S. Dist. LEXIS 5632, at *26-27 (citations omitted) (affirming Magistrate Judge's reasoning that the third *Intel* factor weighs against granting the application); *In re: Cathode Ray Tube Antitrust Litig.*, No. C-07-5944, 2013 U.S. Dist. LEXIS 8255, at *64 (N.D. Cal. Jan. 17, 2013) (affirming the Special Master's finding that the third *Intel* factor weighed against granting discovery because the applicant "side-stepped less-than favorable discovery rules by resorting immediately to § 1782").

GComm's application is a clear attempt at an "end-run around foreign proof-gathering restrictions or other policies of a foreign country." *In re Application for Discovery for Use in Foreign Proceeding Pursuant to 28 U.S.C. § 1782*, 2019 U.S. Dist. LEXIS 5632, at *28 (citation omitted). Brazilian patent litigation is set up in three clear phases, none of which permit a litigant to demand information directly from its adversary: First, the parties prepare and present

briefs based on information **within their control**. Montaury Pimenta Decl., ¶ 10. Second, a court-appointed expert then has a period to conduct fact-finding during which **the expert or the judge** can request certain information from the parties. *Id.*, ¶¶ 10, 19. Third, if, and only if, the court finds infringement and that infringement finding withstands appeal, **the court** orders the defendant to produce certain financial information under the supervision of a court appointed accountant expert. *Id.*, ¶¶ 10, 13, 15. The Brazilian Litigation is currently in the first phase. *Id.*, ¶ 12. Samsung will submit its defense brief shortly and the expert's fact-finding period has not yet opened. *Id.*, ¶ 12. In other words, GComm has already submitted the relevant information within its control. *See id.*, ¶¶ 9, 12. Any additional productions in the Brazilian Litigation will be directed by the court and the court-appointed expert, not by the parties. *Id.*, ¶¶ 9-10. GComm's attempt to use U.S. discovery to obtain information it is not entitled to obtain in Brazil is an end-run around Brazil's deliberate system for conducting patent litigation. *Id.*, ¶¶ 22-24.

GComm's requests for Samsung's financial information are a clear example of "jumping the gun" that U.S. courts have condemned. *Norex Petroleum Ltd.*, 384 F. Supp. at 54. GComm seeks detailed financial data from Samsung such as (1) total number of units sold; (2) total revenue realized; (3) total cost of goods sold; (4) the total profit realized, on a monthly, quarterly and annual basis. Dkt. No. 1-2 (Ex. A, GComm's Discovery Request) at Proposed RFP Nos. 12-14. GComm even goes so far as to request the "identity of each Customer" utilizing Accused Products made, used, sold in, exported to, or imported into Brazil. *Id.* at Proposed RFP Nos. 12-14. Brazil has adopted a procedure whereby a plaintiff is only entitled to this information if the defendant is found to have infringed its patent. Montaury Pimenta Decl., ¶¶ 10, 13-15. There is no finding of infringement against Samsung and the Brazilian courts have already rejected GComm's attempts to obtain early discovery of Samsung's financial information. *Id.*, ¶¶ 16-17.

7

This is akin to a young child asking one parent for a snack then running to the second when the first refuses. This Court should not permit GComm to manipulate the Brazilian litigation procedures and end-run around its rules.

It is particularly notable that the majority of GComm's requested discovery is directed to information about SEDA, not SEA. It would be one thing if GComm were permitted to discovery from SEDA in the Brazilian Litigation, and it asked for this Court's assistance to obtain certain information from SEA that is outside Brazilian jurisdiction. But that is not what is happening here—GComm is not permitted to take discovery from SEDA (or any other Samsung entity) in Brazil, so it is asking this Court to give it back-door access to SEDA-related information through SEA. *Id.,* ¶¶ 16-17, 22-24. Indeed, some of GComm's discovery requests do not even pretend to seek information from SEA and are instead focused entirely on SEDA. For example, "[a]ll Documents discussing, referring, or relating to Samsung Eletrônica Da Amazônia LTDA's representations in the Brazilian Litigation that BR729 is not Essential to the 3GPP Standard." Dkt. No. 1-2 (Ex. A, GComm's Discovery Request) at Proposed RFP No. 7.

GComm's Section 1782 application is a clear and improper attempt to bypass Brazilian legal procedures to obtain documents otherwise unavailable to it. Permitting GComm to sidestep Brazilian legal procedures and manipulate Brazilian courts would subvert the Brazilian court's power to control when and how confidential material is exchanged between parties. The third *Intel* factor weighs heavily in favor of denying GComm's application.

> **2.  Since the Brazilian courts would not be receptive to evidence obtained through GComm's application, *Intel* <u>Factor Two</u> weighs against grant**

The second *Intel* factor is also compelling. This factor's assessment of whether a foreign tribunal would be receptive to foreign discovery relies upon the policies of international comity and state sovereignty. In evaluating this factor, U.S. courts rely upon authoritative proof, such as

8

the Brazilian Civil Procedure Code. *See In re Application for Discovery for Use in Foreign Proceeding Pursuant to 28 U.S.C. § 1782*, No. 17-4269-KM-JBC, 2019 U.S. Dist. LEXIS 5632, at *23 (D.N.J. Jan. 10, 2019) ("[T]he CPC would properly be considered authoritative in evaluating the second factor."). Under Article 77 of the Brazilian Civil Code, litigants must "comply precisely with judicial decisions." Montaury Pimenta Decl., ¶¶ 20-21. Under Article 369 of the Brazilian Civil Code, litigants may rely only on properly obtained evidence, which does not include evidence obtained by bypassing Brazilian law. *Id.*, ¶ 22. "In a situation where the foreign tribunal restricts discovery, granting the application could undermine the statute's objective." *In re Babcock Borsig AG,* 583 F. Supp. 2d 233, 241 (D. Mass. 2008).

As just explained, GComm's application is a clear attempt to bypass Brazilian law. *See supra* Section III.C.1. The Brazilian litigation system provides a mechanism for potential patent infringement plaintiffs to attempt to secure information from potential defendants before they file their main patent infringement suit. Montaury Pimenta Decl., ¶ 11. That mechanism is a preparatory action under Section 381 of the Brazilian Civil Code, and GComm chose not to pursue a preparatory action before filing its patent infringement case. *Id.*, ¶¶ 11-12. The Brazilian litigation system does not give parties any mechanism to demand information directly from their adversaries during a patent infringement case and the Brazilian courts would not be receptive to the demands GComm attempts to make of Samsung through its application. *Id.*, ¶¶ 9, 22-24. And GComm runs afoul of Article 77 of the Brazilian Civil Code by seeking to run around the court's decision not to grant financial discovery, instead of "strictly comply[ing] with judicial decisions," as required. *Id.*, ¶¶ 21-22. The principles of comity direct the Court to not substitute its own judgment for that of the Brazilian court as to how to best manage discovery and demands for information in Brazilian patent litigation.

9

GComm string-cites four separate cases for the proposition that "there is no indication that the Brazilian court would be unreceptive to [§ 1782] discovery," but the cases it cites are inapposite, non-binding authority. *See* Dkt No. 1 (GComm Appl.) at 9-10 (quoting *Medeiros v. Int'l Game Tech.*, No. 2:16-cv-00877-JAD-NJK, 2016 WL 1611591, at *3 (D. Nev. Apr. 22, 2016)). In *Medeiros*, the party targeted through the requested discovery did not intervene—and indeed indicated it would comply with a lawful subpoena—so it is unremarkable that "there [was] no indication that the Brazilian court would be unreceptive to [§ 1782] discovery." *Medeiros*, 2016 WL 1611591, at *1, 3. In *In re Application*, the intervenor did "not cite any material that supports [its] interpretation of Brazilian law" "that the Labor Court will not be receptive to materials," so it is again unsurprising that the court did not find that the Brazilian court would be unreceptive to the requested discovery. *In re Application for an Ord. for Jud. Assistance in a Foreign Proceeding in the Lab. Ct. of Brazil*, 466 F. Supp. 2d 1020, 1032 (N.D. Ill. 2006). Similarly, in *In re Atvos*, the court merely noted that the intervenors "have failed to provide authoritative proof" that the Brazilian court would be unreceptive to the requested discovery. *In re Atvos Agroindustrial Investimentos S.A.*, 481 F. Supp. 3d 166, 177 (S.D.N.Y. 2020). The intervenors' failure to provide evidence in those cases has no bearing on GComm's application. Here, Samsung has provided detailed explanations, supported by sworn testimony and citations to applicable rules, showing both that GComm is attempting to circumvent Brazilian discovery restrictions and that the Brazilian court would not be receptive to Section 1782 discovery.

In the fourth case that GComm cites—*In re Fundo*—the 1782 application sought financial information about U.S. assets in support of collection proceedings in which the Brazilian court had already expressly ordered a search and seizure of assets, funds, and

10

investment accounts. *In re Fundo de Liquidacao Financeira - Fundo de Investimento em Direitos Creditorios Nao Padronizado*, No. 8:21-mc-110-VMC-AAS, 2021 WL 4392258, at *1-2 (M.D. Fla. Sept. 23, 2021). There was thus a clear indication from the Brazilian court that it was interested in obtaining exactly the type of information sought through the Section 1782 application. Here, in contrast, the Brazilian court has not granted GComm's requests for early financial discovery, has not ordered any other discovery, and there is compelling evidence that the court would not be receptive to the requested Section 1782 discovery.

Because GComm declined to pursue a preparatory action under Section 381 of the Brazilian Civil Code and instead proceeded directly to an infringement action, the Brazilian courts do not provide any mechanism for GComm to demand discovery of Samsung and would not be receptive of the demands GComm attempts to make here. The second *Intel* factor also weighs against granting GComm's application.

### 3. The discovery GComm requests is unduly burdensome and intrusive, and therefore *Intel* <u>Factor Four</u> weighs against grant

"Requests are unduly intrusive and burdensome where they are not narrowly tailored, request confidential information and appear to be a broad 'fishing expedition' for irrelevant information." *In re Ex Parte Application of Qualcomm Inc.*, 162 F. Supp. 3d 1029, 1043 (N.D. Cal. 2016). Broad, undefined descriptors like "all documents" and "all documents sufficient to show" are not narrowly tailored and lead to unduly intrusive and burdensome discovery. *See In re CPC Patent Techs. Pty Ltd.,* Order Den. *Ex Parte* Appl. for Disc., No. 5:21-mc-80091-NC (N.D. Cal., Apr. 27, 2021), Dkt. No. 5 at 3, *aff'd sub nom*. *CPC Patent Techs. Pty Ltd. v. Apple, Inc.*, No. 21-mc-80091-JST (N.D. Cal., June 28, 2021) (reviewing for clear error) Dkt. No. 15 at 2, *vacated*, 34 F. 4th 801 (9th Cir. 2022) (remanding for *de novo* review).

11

In *In re Ex Parte Application of Qualcomm Inc.*, the court denied a Section 1782 application that requested information covering a lengthy five to eleven year period and included requests not limited to documents or information connected to the foreign proceeding at issue in Korea. 162 F. Supp. 3d at 1043-44. In *CPC Patent Techs. Pty Ltd. v. Apple, Inc.*, a magistrate judge denied an *ex parte* application as "unduly intrusive or burdensome" where all fifteen document requests were "limited to 'sufficient to show' different attributes" because the "'sufficient to show' descriptor is undefined and is likely to lead to unduly burdensome discovery." Order Den. *Ex Parte* Appl. for Disc., No. 5:21-mc-80091-NC (N.D. Cal., Apr. 27, 2021) Dkt. No. 5 at 3, *aff'd sub nom. CPC Patent Techs. Pty Ltd. v. Apple, Inc.*, No. 21-mc-80091-JST (N.D. Cal., June 28, 2021), Dkt. No. 15 at 2, *vacated on other grounds*, 34 F. 4th 801 (9th Cir. 2022). Further, the magistrate judge also denied the application because the parties involved were simultaneously engaged in litigation in another U.S. district court. Order Den. *Ex Parte* Appl. for Disc., No. 5:21-mc-80091-NC (N.D. Cal., Apr. 27, 2021), Dkt. No. 5 at 3.

Here, GComm's requests are unduly burdensome because they are not narrowly tailored regarding either the content of the documents or the applicable time period. GComm makes 21 document requests, almost half of which use the broad, burdensome, and undefined "all documents" descriptor and the rest using a "sufficient to show" or "sufficient to identify" descriptor which is still likely to lead to unduly burdensome discovery, as recognized by the magistrate judge in *CPC Patent Techs. Pty Ltd. v. Apple, Inc*. Dkt. No. 1-2 (Ex. A, GComm's Discovery Request) at Proposed RFP Nos. 1-22; Proposed RFP Nos. 2, 5-10, 19-20 ("all documents"), Proposed RFP Nos. 1, 3, 4, 11-18, 21 ("sufficient to show"), Proposed RFP No. 15 ("sufficient to identify"). The requests seek information across a vast time period with vague bounds with the relevant time period being "the earliest date that SEA began design,

12

development, creation, manufacture, or testing of the Accused Products, to the present" unless specified. Dkt. No. 1-2 (Ex. A, GComm's Discovery Request) at 2, ¶ 8. The first request, for example, refers to any product using any 3GPP standard and the founding of 3GPP dates back to 1998.[1]

> All Documents sufficient to show each of SEA's or Samsung Eletrônica Da Amazônia LTDA's products made, used or sold in Brazil *that practice any 3GPP Standard* and the 3GPP Standard(s) or part(s) of the 3GPP standard those products comply with.

*Id*. at Proposed RFP No. 1 (emphasis added). Further, GComm essentially requests documentation for every business transaction SEA and SEDA ever made in the technological space:

> Documents sufficient to identify, for each of the Accused Products, *each of Your past and present* customers, distributors, manufacturers, or any other Person purchasing, selling, or making any Accused Product, and for each Person, identify the total number of units shipped or delivered in Brazil or to or from Brazil and total sales in dollar value to or by each such entity for each calendar quarter of sales within Brazil or exported from Brazil.

*Id*. at Proposed RFP No. 15 (emphasis added).

GComm's requests broadly seek "(a) the total number of units sold; (b) the total revenue realized; (c) the total cost of goods sold; (d) the total profit realized;" for Accused Products (Samsung Transmission Equipment) and also seek *any* SEA or SEDA products practicing *any* 3GPP standard "made in, used in, sold in, exported to, or imported into Brazil . . . on a monthly, quarterly and annual basis" as well as "(e) *the identity of each Customer*." *Id*. at Proposed RFP Nos. 12-14.

---

[1] 3GPP, *About 3GPP* (2022), http://www.3gpp.org/about-3gpp (last visited June 30, 2022).

GComm's deposition topics are equally broad.  For example, they include "intellectual property licensing practices, including in the context of standard essential patents" (Proposed Dep. Topic No. 16), "sale, provision, supply, or transfer of the Accused Products to any entity or third party who distributes, sells, or provides the Accused Products in Brazil" (Proposed Dep. Topic No. 8), and "revenue and profits on a quarterly and annual basis, for each year since 2017, concerning the Accused Products (e.g., revenue, profits, net income, and costs for each Accused Product from sales, licensing, installation, support, maintenance, or other services)" (Proposed Dep. Topic No. 11). Dkt. No. 1-2 (Ex. A, GComm's Discovery Request).

The broad sweep of the document requests and deposition topics is a bridge way too far. Because of the overbreadth and burden of these requests, the fourth *Intel* factor further supports the denial of GComm's application.

### 4. GComm really seeks discovery from SEDA, which is party to the Brazilian litigation, and thus *Intel* <u>Factor One</u> weighs against grant

Although GComm's application is nominally directed to Samsung Electronics America, Inc., in reality it seeks information about and related to Samsung Eletrônica Da Amazônia, Ltd.—the company GComm sued in the Brazilian Litigation. When a non-party is used as a puppet to target a party to a foreign litigation, the Supreme Court's concerns that evidence might be unobtainable in the foreign jurisdiction absent Section 1782 aid vanish.  *See In re: Cathode Ray Tube Antitrust Litig.*, 2013 U.S. Dist. LEXIS 8255, at *60-61 (finding the first factor against the applicant because "despite [the application target's] non-party status, it is obvious that [the applicant] actually seeks information about [the Korean Litigation] Defendants, some of whom are subject to Korean discovery rules as parties to the Korean Litigation").

Here, GComm's application targets SEA as a mere puppet to get information from SEDA, the defendant in the Brazilian litigation.  Several of GComm's requests are completely

14

transparent. For example, GComm seeks "[a]ll Documents discussing, referring, or relating to Samsung Eletrônica Da Amazônia LTDA's representations in the Brazilian Litigation that BR729 is not Essential to the 3GPP Standard," and testimony on "Samsung Eletrônica Da Amazônia LTDA's determination that G+ Communications' offer to license the G+ Patent Portfolio was not fair, reasonable, and nondiscriminatory ('FRAND')." Dkt. No. 1-2 (Ex. A, GComm's Discovery Request) at Proposed RFP No. 7, Proposed Dep. Topic No. 6. These discovery requests have nothing to do with SEA and seek information entirely related to SEDA. Other requests, although superficially directed to SEA, are thinly-veiled attempts to get discovery from SEDA. (*E.g.*, *id*. at Proposed RFP No. 10: "[a]ll Documents discussing, referring, or relating to any Communications between SEA, or anyone acting on its behalf, and any other Person, including Samsung Eletrônica Da Amazônia LTDA, relating to (1) the Brazilian Litigation, (2) BR729, and (3) each Accused Product's compliance [with] the 3GPP Standard.")

GComm gives no plausible reason to think that SEA would have any relevant information related to SEDA or the Brazilian Litigation. GComm merely identifies two individuals whose LinkedIn profiles show that they work for Samsung in Texas. It provides no explanation of how these two individuals are relevant to the Brazilian litigation in any way, nor does it provide any other reason to believe that these individuals—or SEA—may have relevant information.

GComm's argument for this factor rests on a quote from *Intel* that "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Intel*, 542 U.S. at 264; *see* Dkt No. 1 (GComm Appl.) at 8. From this, it argues that "SEA is not a party to

15

the Brazilian Litigation and relevant evidence housed by SEA in the United States is outside of the Brazilian Court's legal reach." SEDA—to which many of GComm's requests are expressly directed, and from which many other implicitly seek information—is within the Brazilian court's jurisdiction, and is a party to the Brazilian Litigation.

GComm's application targets SEA as a puppet to attempt to get discovery from and related to SEDA—the defendant in the Brazilian litigation—and makes no plausible showing why SEA would have relevant information. Therefore the first *Intel* factor weighs against grant.

### III. CONCLUSION

Each of the *Intel* factors weigh heavily in favor of denying GComm's application. For the above reasons, Samsung respectfully requests the court DENY GComm's *ex parte* application for discovery for use in a court proceeding in Brazil pursuant to 28 U.S.C. § 1782.

Dated: June 30, 2022

Respectfully submitted,

*/s/ Melissa Richards Smith*
Melissa Richards Smith
TX Bar No. 24001351
melissa@gillamsmithlaw.com
GILLAM & SMITH, LLP
303 South Washington Ave.
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

FISH & RICHARDSON P.C.

Ruffin B. Cordell
TX Bar No. 04820550
cordell@fr.com
Michael J. McKeon
DC Bar No. 459780
mckeon@fr.com
Ralph A. Phillips
DC Bar No. 475571

rphillips@fr.com

Linhong Zhang
DC Bar No. 982341
lwzhang@fr.com

Kenton W. Freeman, Jr.
DC Bar No. 1671507
will.freeman@fr.com

Sun Young Park
NY Bar No. 5412739
apark@fr.com

Julianne Campbell
DC Bar No. 1766159
jcampbell@fr.com
1000 Maine Avenue, SW, Suite 1000
Washington, DC 20024
Tel:  (202) 783-5070
Fax:  (202) 783-2331

Leonard Davis
Texas Bar No. 05521600
ldavis@fr.com

Thomas H. Reger II
Texas Bar No. 24032992
reger@fr.com

Rodeen Talebi
Texas Bar No. 24103958
talebi@fr.com
1717 Main Street, Suite 5000
Dallas, TX 78766
Tel  (214) 747-5070
Fax (214) 747-2091

John Thornburgh
CA Bar No. 154627
thornburgh@fr.com

Aleksandr Gelberg
CA Bar No. 279989
gelberg@fr.com
12860 El Camino Real, Suite 400
San Diego, CA 92130
Tel (858) 678-5070
**Counsel for Intervenor**
SAMSUNG ELECTRONICS AMERICA, INC.

17

## **CERTIFICATE OF SERVICE**

This is to certify that on June 30, 2022, a true and correct copy of the foregoing instrument was delivered to all counsel of record through the court electronic system.

<em>/s/ Melissa Richards Smith</em>