**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| In Re Application of | § | |
| | § | |
| G+ Communications LLC, | § | |
| | § | |
| Applicant, | § | Case No. 2:22-mc-003-JRG-RSP |
| | § | |
| For an Order Pursuant To | § | |
| 28 U.S.C. § 1782 To Conduct Discovery | § | |
| For Use In A Foreign Proceeding | § | |

## <u>MEMORANDUM ORDER</u>

Before the Court, G+ Communications LLC ("GComm") applies for judicial assistance pursuant to 28 U.S.C. § 1782 for an order permitting targeted discovery from Samsung Electronics America ("SEA") for use in Brazilian litigation[1] between the applicant and Samsung Eletrônica Da Amazônia LTDA ("SEDA"). **Dkt. No. 1**. The Court found insufficient cause to proceed *ex parte* and ordered the applicant to provide SEA notice. Dkt. No. 2. Thereafter, SEA moved to intervene, which the Court granted, and filed a response to GComm's § 1782 application. Dkt. Nos. 4, 6, & 7. The undersigned then heard oral arguments on the application. Dkt. No. 22.

A major issue during the oral arguments was whether SEA had the information GComm sought, and Samsung offered to provide an affidavit regarding the extent of SEA's involvement in the design and development of products accused in the Brazilian litigation. Dkt. No. 27 at 30:16-22. SEA then filed the declaration of Guy Waitley, the Director of Product Management and Launch Operations at SEA. Dkt. No. 25.

---

[1] Case No. 0081472- 49.2022.8.19.0001, and its corresponding Interlocutory Appeal No. 0031565-11.2022.8.19.0000

The Court may grant a § 1782(a) application if the statutory prerequisites are satisfied and if discretionary factors favor assistance. *Bravo Express Corp. v. Total Petrochemicals & Ref. U.S.*, 613 F. App'x 319, 321 (5th Cir. 2015) (citing *Ecuadorian Plaintiffs v. Chevron Corp.*, 619 F.3d 373, 376 (5th Cir.2010) and *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004)).

Following oral arguments, the Court issued an order wherein it found that the statutory prerequisites to § 1782 were met but that a material dispute existed as to the discretionary factors meriting limited discovery. Dkt. No. 26. Regarding the discretionary factors, the Court found:

> The Supreme Court in *Intel* directed lower courts ruling on request under § 1782(a) to consider the following discretionary factors: (1) "whether the person from whom discovery is sought is a participant in the foreign proceeding," (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance," (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States," and (4) whether the discovery request within the § 1782(a) application is "unduly intrusive or burdensome." 542 U.S. at 264-65. Addressing these factors, first, SEA is not a participant in the foreign proceeding, strictly speaking, but it is closely related to SEDA. Second, regarding "receptivity," the expert declarations indicate that the Brazilian court would likely consider any evidence obtained by Applicant through this request. Third, however, there is also evidence that this request is an "attempt to circumvent foreign proof-gathering restrictions." Key to this issue is the extent to which SEA has been involved in the design and development of the products accused in the Brazilian litigation. If it has been involved, and assuming it is not subject to the jurisdiction of the Brazilian court for discovery, then it may not be unfair to require it to respond to discovery under § 1782(a). Fourth, the extent to which the requests are "intrusive or burdensome" is closely related to the involvement of SEA with the accused products. In other words, if discovery that should be directed solely to SEDA is redirected to SEA only because the Brazilian court is not allowing discovery of SEDA, the burden of the requests is more likely unfair.

*Id.* p 2-3. To better evaluate these issues, the Court permitted GComm to depose SEA under Rule 30(b)(6) for no more than 6 hours "on the topic of any involvement of SEA in the design or development, broadly understood, of the products accused in the Brazilian litigation." Dkt. No. 26 p 3. Further, the Court ordered GComm to file a supplemental brief within twenty days after the

completion of the Rule 30(b)(6) deposition and granted SEA the opportunity to file a responsive brief fourteen days after GComm filed its supplement. *Id*. SEA offered as a Rule 30(b)(6) deponent Patrick Garvin, Project Manager for handheld phones, who was deposed in October 2022. Dkt. No. 30-1. Since that time, GComm supplemented its application, Dkt. No. 30, and SEA supplemented its opposition, Dkt. No. 32.

The deposition testimony of Garvin sheds light on the question of SEA's involvement in the design and development of products subject to litigation in Brazil. In sum, the vast majority of product design and development, including both hardware and software, occurs in South Korea by Samsung Electronics Co., Ltd. ("SEC"), and SEA configures the devices to function on US carrier networks. Dkt. No. 30-1 at 13:11-14:24, 24:19-25:10, 28:18-23, 33:25-34:13, 47:24-48:12. When asked about the products subject to litigation in Brazil, Garvin consistently asserted that he has no knowledge of the products in Brazil because SEA is focused on configuring devices to function on US carrier networks. *Id*. at 9:14-18; 50:3-7. Despite Garvin's tenure with Samsung, he has never worked with SEDA and cannot speak to the standards required by Brazil to which SEDA would configure devices to function. *Id*. at 17:12-16, 43:6-12, 44:16-45:3, 48:24-13.

GComm's supplement criticizes Garvin for his lack of 5G or 3GPP technical experience and his lack of knowledge with respect to SEA employees who hold themselves out as 5G or 3GPP experts. GComm claims there are several SEA employees who "possess knowledge and likely discoverable material regarding the Accused Products certified to operate in the 4G+, 4.5G, and 5G networks." Dkt. No. 30 p 8. GComm then provides the names of several SEA employees who hold themselves out as experts in 4G, 5G, and/or 3GPP working in research and development. *Id*. 9-10.

Notably, the possession of knowledge and discoverable material relating to 4G, 5G, and/or 3GPP has no bearing on SEA involvement in the design and development of products accused in the Brazilian litigation. As Garvin testified, SEA engineers take products predominantly designed and developed by SEC in South Korea, conduct experiments in US carrier labs, and make temporary test changes to the code to optimize performance on US networks. Dkt. No. 30-1 p 17:3-11, 33:25-34:13, 44:21-45:13. Such an engineer would most likely have some knowledge or expertise regarding the standards employed by the US, including 3GPP. However, the question is whether SEA is involved in the development of products in Brazil, not the United States.

GComm argues that discovery from SEA is applicable to SEDA because "there is no evidence that 5G is implemented differently in Brazil or that different standards are used." Dkt. No. 30 p 7 (citing Dkt. No. 30-1 43:6-12 ("Q: Do you know if – do you have any reason to believe that [SEDA] uses different versions of the 3GPP standards? … A: I can't speak to standards that are used in Brazil"). Likewise, there is no evidence that the US and Brazil implement 5G in an identical or substantially similar manner, or that SEA configures devices to US carriers in an identical or substantially similar manner as devices are configured for Brazilian carriers. Some degree of additional discovery, likely upon SEDA, would be required to confirm similarities between SEA's configuration to US carriers and SEDA's configuration to Brazilian carriers.

Lastly, GComm argues that SEA possesses documents and emails from SEC relevant to the products subject to litigation in Brazil. Dkt. No. 30 p 11. While that may be correct, the argument undermines the relief sought because it furthers the testimony of Garvin that the design and development of the products subject to the Brazilian litigation, including the design and development of source code to comply with 3GPP and 5G standards, derive from SEC in South Korea and not SEA in the US.

Because GComm is unable to demonstrate that SEA is involved in the design and development of Samsung products in Brazil or the configuration of products for Brazil's networks, the discovery GComm requests is unduly intrusive. Further, because evidence is required to confirm similarities between SEA configuration to US carrier networks and SEDA configuration to Brazilian carrier networks, and because such additional evidence would likely come from SEDA, the application appears to be an attempt to circumvent discovery on SEDA.

For the reasons discussed above, GComm's application pursuant to 28 U.S.C. § 1782 is **DENIED**.

**SIGNED this 1st day of February, 2023.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE

5